**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**CASSANDRA PRUITT,**

    **Plaintiff,**

**v.**                                          Case No. 1:25-cv-07059-MHC-AWH

**UNIVERSAL PROTECTION
SERVICE, LLC, d/b/a, ALLIED
UNIVERSAL SECURITY
SERVICES,**                                       **JURY TRIAL
DEMANDED**

    **Defendant.**

_____/

**PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIM**

**I.   SUMMARY OF THE ARGUMENT**

This is a case about Defendant's retaliation and interference against its now-former employee, Plaintiff Cassandra Pruitt. After she filed this lawsuit, she suffered additional retaliatory acts by Defendant related to her new employment, which subsequently ended after Defendant's interference. Ms. Pruitt then filed her Amended Complaint to include these additional facts and in response Defendant filed a retaliatory counterclaim against her. The counterclaim should be dismissed because it fails to state a claim. Alternatively, the counterclaim should be dismissed because it is permissive, not compulsory, and does not have jurisdiction in this Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Cassandra Pruitt started working for AlliedBarton Security Services, LLC on February 15, 2015. (ECF No. 8, Amended Complaint, ¶ 16). At some point in time, AlliedBarton became Defendant Universal Protection Service, LLC, d/b/a Allied Universal Security Services ("Allied" or "Defendant"). (*Id.* ¶ 17).

Allied provides private security services for various types of businesses and properties by placing its employees at its clients' properties to provide security services. (ECF No. 8, ¶¶ 18-19). Ms. Pruitt held a variety of managerial positions with Defendant. (Id. ¶ 20). From January 2021 until her removal on February 10, 2025, Ms. Pruitt served as the Security Director for multiple properties managed by Defendant's client, Daniel Corporation. Each of Daniel's properties had its own Daniel manager. (*Id.* ¶ 21).

### Plaintiff's FMLA leave.

On January 6, 2025, Ms. Pruitt went on continuous FMLA leave, which Defendant approved. (ECF No. 8, ¶¶ 22-23). All of her supervisors were aware that she was on protected FMLA leave. (*Id.* ¶ 24). Ms. Pruitt's doctor permitted her to return to work on February 7, 2025 but placed her on intermittent FMLA leave until

---

[1] This summary of the facts and procedural posture are taken from Plaintiff's Amended Complaint, ECF No. 8, and Defendant's Counterclaim, ECF No. 14, pp. 30-54. Plaintiff's claims are pertinent to show that Defendant's Counterclaim is permissive, not compulsory.

March 31, 2025, which Defendant also approved. (*Id.* ¶¶ 25-26).

### Plaintiff's prior lawsuit against Defendant.

On April 30, 2020, Ms. Pruitt filed a lawsuit in the Northern District of Georgia against Defendant regarding gender discrimination and retaliation in violation of Title VII and the Equal Pay Act, Case No. 1:20-cv-1884. (ECF No. 8, ¶ 56). The trial court dismissed Ms. Pruitt's claims at summary judgment and she appealed to the Eleventh Circuit Court of Appeals on September 29, 2023, Appeal No. 23-13239. (*Id.* ¶ 57). On December 4, 2024, the Eleventh Circuit issued an opinion upholding the trial court's rulings; Ms. Pruitt filed a Petition for Rehearing on December 26, 2024. (*Id.* ¶ 58). The Eleventh Circuit denied the Petition for Rehearing On January 8, 2025 and issued its mandate on January 16, 2025. (*Id.* ¶¶ 59-60).

### Defendant removes Plaintiff from her post and fails to place her in a comparable position.

On February 10, 2025, three days after she returned from full-time FMLA leave, Defendant removed Ms. Pruitt from her supervisory position at Daniel's properties. (ECF No. 8, ¶ 27). Defendant's removal and subsequent refusal to place Ms. Pruitt in a new position occurred only three weeks after the Eleventh Circuit issued its mandate. (*Id.* ¶ 61).

Defendant told Ms. Pruitt that she had had three weeks to find a new available post—on her own, without any assistance from them, even though it had several

3

comparable openings at that time. (ECF No. 8, ¶¶ 28-29). Ms. Pruitt applied for every open position but only a few days later, Allied deactivated her Allied employee account. (*Id*. ¶ 30). When she complained, Defendant told Ms. Pruitt to set up her own private account to apply for new positions—but this process would not alert other supervisors that Ms. Pruitt was a current employee, let alone give them access to her entire work history for the past decade. (*Id*. ¶ 31).

Approximately two months later, Ms. Pruitt was offered her first new post, but it would be a more than 50% cut in her salary; she agreed to take it despite the pay cut. (ECF No. 8, ¶ 32). But after Ms. Pruitt accepted this position at a significant pay cut, the supervisor claimed it was no longer available. (*Id*. ¶ 33).

During a phone call with Defendant's Human Resources Manager, Justin Minge, in the Spring of 2025, regarding Defendant's failure to place her in a new position, Ms. Pruitt asked him whether she was under any restrictive covenants prohibiting her employment elsewhere. Minge definitively responded, "no." (ECF No. 8, ¶ 37).

Adding insult to injury, Defendant cancelled Ms. Pruitt's health insurance in March 2025. (ECF No. 8, ¶ 36).

Ms. Pruitt continued to apply for Allied positions and learned that one of the Daniel managers—Allied's client—requested her to return to provide security for his property in the summer of 2025. (ECF No. 8, ¶ 34). Despite the direct request

of the Daniel manager to have Ms. Pruitt assigned to provide security for his building, Defendant never even contacted Ms. Pruitt about the open position. (*Id*. ¶ 35).

### Plaintiff obtains new employment in September 2025.

Receiving no placements in a new position from Allied, Ms. Pruitt began applying for jobs outside of Allied. (ECF No. 8, ¶ 40). She secured a new position with Prosegur Security in September 2025. (*Id*. ¶ 41).

### Defendant attempts to remove Plaintiff's prior protected leave status.

On December 3, 2025, Minge retroactively applied for Ms. Pruitt to be on personal administrative leave—not protected FMLA leave—from the date she was removed from Daniel's properties, February 10, 2025, through to January 5, 2026. (ECF No. 8, ¶¶ 42-43). This not only attempted to remove her protected status but covered up Defendant's failure to place Ms. Pruitt in a comparable position after her FMLA leave. (*Id*. ¶ 43). She only learned of Minge's nefarious deed because Defendant's third-party benefits administrator contacted her directly about the "personal administrative" leave request that she never made. (*Id*. ¶ 44).

### Plaintiff filed the instant lawsuit.

Ms. Pruitt initiated this lawsuit on December 10, 2025 against Defendant for interference with and retaliation against her exercise of her rights under the Family Medical Leave Act and retaliation in violation of Title VII. (ECF No. 8, ¶ 45; ECF

No. 1). After a brief extension, Defendant filed its Answer on January 16 2026. (ECF No. 8, ¶ 46; ECF Nos. 5, 7). The Parties' counsel held their planning meeting on January 26, 2026. (ECF No. 8, ¶ 47; ECF No. 11).

### **Defendant contacts Plaintiff's new employer.**

Shortly after the planning meeting, on the same day as that meeting, Defendant's counsel sent Plaintiff's counsel a letter falsely claiming that Ms. Pruitt violated an alleged non-solicitation agreement. (ECF No. 8, ¶ 48). The agreement was between Ms. Pruitt and AlliedBarton Security Services, signed on February 12, 2015—not between Ms. Pruitt and Universal Protection Service, LLC. (*Id*. ¶ 49). Defendant then divulged that they sent a similar letter to Ms. Pruitt's current employer, Prosegur, that same day also falsely claiming that Ms. Pruitt was violating various restrictive covenants. (*Id*. ¶ 50). Defendant was well aware that Ms. Pruitt was not violating anything in the contract—a contract that its Human Resources Director told her did not exist. (*Id*. ¶ 53).

After receiving that letter, Prosegur not only asked Ms. Pruitt about the alleged restrictive covenants but also asked her about her OSHA complaint that she filed with the Department of Labor against Defendant in January 2025. (ECF No. 8, ¶ 51). Ms. Pruitt's OSHA complaint is confidential as it is in the investigative stage and is not a matter of public record; the only way Prosegur would know about the OSHA complaint is if Defendant informed them of the same. (*Id*. ¶ 52). Defendant's

6

malicious intent worked to its ends and Ms. Pruitt's employment with Prosegur ended on February 4, 2026. (*Id*. ¶ 55).

### Plaintiff's Amended Complaint.

Plaintiff filed the operative Amended Complaint on February 6, 2026, to include the additional retaliatory facts that occurred after she filed her initial Complaint as well as a new count for interference with a business relationship. (ECF No. 8).

### Defendant's Counterclaim.

In its Answer to the Amended Complaint, Defendant for the first time filed a three count Counterclaim against Ms. Pruitt claiming that she violated restrictive covenants and engaged in trade secret violations. (ECF No. 14, pp. 30-54, CC ¶¶ 1-90).

Defendant states that Ms. Pruitt signed an Employment Agreement upon her hiring with AlliedBarton on February 12, 2015. (ECF No. 14, CC ¶¶ 19-20). Sometime after that date, AlliedBarton and Universal Protection Service merged and Ms. Pruitt's employment, and the Agreement, inured to Allied Universal pursuant to Section 8(f) of the Agreement. (*Id*. CC ¶ 21).

Pertinent here, the Agreement contains restrictive covenants regarding "Confidential Information" and "Non-Solicitation of Employees." (ECF No. 14, CC ¶¶ 25, 27). And, as to confidential information, Ms. Pruitt had access to confidential

7

and proprietary information included detailed knowledge of Allied Universal's operations and finances, as well as sensitive information related to the client accounts she managed, that was not generally known or readily accessible to the public and which are subject to significant measures by the Company to maintain its confidentiality. (*Id*. CC ¶¶ 12-13, 31). The Agreement prohibits Ms. Pruitt from using or disclosing said information for any purpose other than the performance of her job duties. (*Id*. CC ¶ 25). The non-solicitation of employees provision applies to:

> any employee, agent or representative of [Allied Universal]: i) who was employed or engaged by [Allied Universal] at the time of the termination of [Plaintiff's] employment or who had been employed or engaged by [Allied Universal] within six (6) months prior to the termination of [Plaintiff's] employment; and ii) with whom [Plaintiff] had material contact during his or her employment with [Allied Universal].

(*Id*. CC ¶ 27). The non-solicitation provision lasts for a period of one year. (*Id*.).

Ms. Pruitt was removed from her Daniel Corporation account assignment due to alleged performance concerns on February 10, 2025. (ECF No. 14, CC ¶ 32). She was not immediately terminated but was given the opportunity to apply for and interview for other Account Manager positions within the Company and placed on leave status. (*Id*. CC ¶¶ 34-35). Defendant states that "Plaintiff treated her employment as ended and accepted a position with a competing security company, Prosegur Security USA ("Prosegur"), as a General Manager" in September 2025. (*Id*. CC ¶¶ 36-37).

8

In early January 2026, Allied Universal began receiving reports that Plaintiff was contacting and soliciting Allied Universal employees to join her at Prosegur; specifically: Keye Lowery and David Ogunfowokan. (ECF No. 14, CC ¶¶ 38-39). Reports indicated that Ms. Pruitt solicited Ms. Lowery on December 15 and 23, 2025 and that Ms. Lowery resigned from Allied on January 7, 2026 and shortly thereafter, accepted a position with Prosegur. (*Id.* CC ¶¶ 40-42). Reports indicated that Ms. Pruitt solicited Mr. Ogunfowokan by calling him multiple times to accept a role with Prosegur, that he resigned to take a position but then rescinded the acceptance of the new job and remained with Allied. (*Id.* CC ¶¶ 43-44).

On January 26, 2026, Allied Universal sent a letter to Plaintiff's counsel reminding Plaintiff of her continuing obligations under the Agreement and also sent a letter to Prosegur to place them on notice of the Agreement, request confirmation that Plaintiff's role and responsibilities were consistent with those obligations and seek clarification regarding any Allied Universal employees recruited by Plaintiff. (ECF No. 14, CC ¶¶ 46-47).

Prosegur reviewed Ms. Pruitt's Prosegur email account and identified communications evidencing her solicitation of four Allied employees—including (1) Keye Lowery, (2) Michael Bolton, (3) Richard Bray, and (4) Stanton Babcock. (ECF No. 14, CC ¶ 51). Prosegur also identified documents bearing the Allied Universal logo that Plaintiff had transmitted from a personal iCloud account to her Prosegur

email account that directly implicated at least three sites within Allied Universal's Daniel Corp. account and were only accessible to Plaintiff by virtue of her former role as Account Manager and include sensitive financial and operational data. (*Id*. CC ¶¶ 52-55).

## III. STANDARD OF REVIEW

In reviewing a motion to dismiss, "the Court must view the allegations of the complaint in the light most favorable to the [counter]-plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). However, the Court need not accept any legal conclusions asserted in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Federal pleading standards require "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). The [counter]-plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187-88 (11th Cir. 2002).

IV. **LEGAL ARGUMENT**

  A. **Defendant's counterclaim fails to state a cause of action and should be dismissed.**

Defendant's counterclaim against Ms. Pruitt fails to state a cause of action and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

  1. *Defendant has not stated a viable claim for a breach of contract claim.*

To show a breach of contract, the Defendant must prove: "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *McAlister v. Clifton*, 873 S.E.2d 178, 183 (2022). Defendant claims that Ms. Pruitt violated restrictive covenants post-employment, but as shown herein, Defendant fails to state a cognizable claim.

Defendant claims that Ms. Pruitt "solicited" several of its employees in violation of the restrictive covenant. But the non-solicitation clause does not prohibit the solicitation of any of Defendant's employees. Instead, it is limited only to those employees who were "employed or engaged by" Defendant at the time of Ms. Pruitt's termination **and** "with whom [Ms. Pruitt] had material contact during [ ] her employment." ECF No. 14-1 at 4. Nowhere does Defendant state the dates of employment for the various individuals listed let alone how Ms. Pruitt **also** had material contact. This dooms the solicitation violation aspect of Count I.

Further, Defendant claims that Ms. Pruitt allegedly solicited these individuals in a conclusory fashion. Defendant never states **how** she solicited any of them and

11

vaguely references communications, and in the case of Mr. Ogunfowokan, it alleged they had phone calls. But mere contact is insufficient to show solicitation. "[S]olicitation require[s] affirmative action on the part of an employee (...). To solicit is to use some sort of salesmanship, to encourage and persuade another to do something. And it requires that the party bound by the covenant [ ] *initiate* such salesmanship." *Universal Prot. Serv., LLC v. Bohling*, No. 1:23-cv-851-MLB, 2023 U.S. Dist. LEXIS 126396, at *24-25 (N.D. Ga. May 22, 2023) (cleaned up) (emphasis in original). Defendant does not come close to describing actual solicitation.

And in fact, as to Mr. Ogunfowokan and Ms. Keye, Defendant states "[i]f confirmed" that Ms. Pruitt solicited these individuals, then it would constitute a breach. ECF No. 14, CC ¶ 45. Such a hypothetical cannot support Defendant's claim.

Finally, Defendant claims that Ms. Pruitt violated the confidentiality provision by "improperly using and disclosing" its confidential information. ECF No. 14, CC ¶ 60. Defendant has no facts to support this allegation—it only claims that Ms. Pruitt emailed the documents to herself—not to anyone else—and zero facts about her using the information in any manner.

Count I of Defendant's counterclaim for breach of contract should be dismissed.

### *2. Defendant has not stated viable claims for trade secrets violations.*

To show that Ms. Pruitt violated the Defend Trade Secrets Act (DTSA) or the Georgia Trade Secrets Act (GTSA), Defendant must prove that "(1) it possessed a trade secret, and (2) the opposing party misappropriated it." *Kapstone Container Corp. v. Boyd*, No. 1:17-cv-01902-TWT, 2017 U.S. Dist. LEXIS 214350, at *3-4 (N.D. Ga. June 27, 2017). "Misappropriation" generally means to acquire the information by improper means or to disclose "to anyone outside the company" or to use the information "without consent." *Advantor Sys. Corp. v. DRS Tech. Servs.*, 678 F. App'x 839, 858-59 (11th Cir. 2017); see also, O.C.G.A. § 10-1-761(2), 18 U.S.C. § 1839(5).

Defendant fails to show that Ms. Pruitt acquired the information through improper means, or disclosed the alleged information to anyone, let alone used it; Defendant simply states she emailed the documents to herself. This does not show a violation of either the DTSA or the GTSA.

Further, in DTSA counterclaim, Defendant only states "upon information and belief" that Ms. Pruitt "acquired, disclosed, transmitted, and/or used" the information without authorization. ECF No. 14, CC ¶¶ 71-72. But allegations based on "upon information and belief" are not given any credence on a motion to dismiss. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551, 557 (2007). Under the GTSA, Defendant alleges that

Ms. Pruitt disclosed, used and transmitted these materials to a direct competitor. ECF No. 14, CC ¶ 84. But it provided no facts to support such a claim. It only stated that she emailed the documents to herself—no one else—and has no facts to show that she used these documents at all. Such unsupported allegations cannot further Defendant's counterclaim.

Plus, under the DTSA, the alleged trade secret must be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C § 1836(b)(1). In a conclusory manner, Defendant claims that the information "involves services that are utilized throughout interstate commerce." ECF No. 14, CC ¶ 74. But Defendant fails to explain how this is so given it claims the documents only referred to one client account with three sites which were within the State of Georgia for its on-site security. That is not an interstate service or affecting interstate commerce.

Counts II and III of Defendant's counterclaim for alleged trade secret violations should be dismissed.

### B. Defendant's counterclaim against Ms. Pruitt is not compulsory and should be dismissed.

Alternatively, if this Court does not dismiss Defendant's counterclaim pursuant to Rule 12(b)(6), it should be dismissed as a permissive claim lacking jurisdiction, and not a compulsory claim under Rule 13.

A compulsory counterclaim is one that a party has "at the time of its service"

if it arises out of the same transaction or occurrence as the opposing party's claim and does not require adding a party outside the court's jurisdiction. Fed. R. Civ. P. 13(a). The Eleventh Circuit uses the "logical relationship" test for "transaction or occurrence," which asks whether the same operative facts serve as the basis of both claims—including where the core facts of the original claim activate additional legal rights. *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985).

Here, there are no common operative facts or transactions. Ms. Pruitt's claims of retaliation and interference are distinct from Defendant's counterclaim that she allegedly violated restrictive covenants. No doubt Defendant will argue that Ms. Pruitt's Amended Complaint claims that Defendant notified her subsequent employer about alleged violations of the non-solicitation provision brings common facts to this matter. But that does not implicate whether she violated the restrictive covenants. Plus, that is only part of it. She also alleged that Defendant told her subsequent employer about her current and prior claims against Defendant, including her Department of Labor OSHA Whistleblower complaint that was not publicly available.

Whether Ms. Pruitt violated the restrictive covenants or not is not pertinent to her retaliation and interference claims. Plaintiff's claims concern different legal theories, witnesses, and evidence than Defendant's counterclaim. Nor do her claims

rely on resolution of Defendant's counterclaim.

Further, no counterclaim can be compulsory if it is not put forth in response to the service of the original complaint. Fed. R. Civ. P. 13(a). "A counterclaim that is acquired by the defendant *after* he has answered the complaint is not compulsory, even if it arises out of the same transaction as does the plaintiff's claim." *Supreme Mfg. Co. v. United States Bev., Inc.*, No. 2:08-cv-832-MEF, 2009 U.S. Dist. LEXIS 38525, at *4 (M.D. Ala. May 5, 2009) (emphasis in original). Although Defendant states it learned of alleged violations of the non-solicitation provision in early January, it did not file its counterclaim in its initial Answer, only in response to the Amended Complaint.

Once the counterclaim is properly viewed as permissive, Defendant must establish jurisdiction in this Court for its claims. While Defendant does have a federal trade secret claim, as noted above, Defendant fails to show that the documents concern services used in interstate commerce; as such, that claim should be dismissed. And, if the federal trade secret claim is dismissed, Defendant will not be able to show independent subject matter jurisdiction of its state law claims. *McCants v. Babe's S. Inc.*, No. 3:13-cv-376-MCR-CJK, 2017 U.S. Dist. LEXIS 226749, at *5-6 (N.D. Fla. Apr. 11, 2017) (noting permissive counterclaims "traditionally have required an independent jurisdictional basis for subject matter jurisdiction"). With no subject matter jurisdiction over Defendant's state law

counterclaims, they must be dismissed.

## V. CONCLUSION

For the reasons herein, Plaintiff requests this Court to dismiss Defendant's counterclaim for failing to state a cause of action, or alternatively, dismiss the counterclaim as not compulsory, but permissive and lacking jurisdiction.

Respectfully submitted this 13th day of March 2026,

                                          **Lisa C. Lambert**
                                          Lisa C. Lambert
                                          Georgia Bar No. 142135
                                          Law Office of Lisa C. Lambert
                                          245 North Highland Avenue
                                          Suite 230-139
                                          Atlanta, GA 30307
                                          404.556.8759
                                          lisa@civil-rights.attorney

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using 14-point Times New Roman font.

                                          **Lisa C. Lambert**
                                          Lisa C. Lambert
                                          Georgia Bar No. 142135

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed Plaintiff's Motion to Dismiss Defendant's Counterclaim with the Clerk of Court using the CM/ECF system that will cause service by electronic mail to all attorneys of record.

This 13th day of March 2026,

                                       **Lisa C. Lambert**
                                       Lisa C. Lambert
                                       Georgia Bar No. 142135